IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILFRED BRASSEUR, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:17-CV-1420 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND OPINION

Plaintiff Wilfred Brasseur filed this case under the Social Security Act, 42 U.S.C. § 405(g) for review of the Commissioner's final decision denying his request for social security disability insurance benefits. Brasseur and the Commissioner filed cross-motions for summary judgment (Dkts. 8, 9). After considering the pleadings, the record, and the applicable law, the court recommends **GRANTING** the Commissioner's motion, **DENYING** Brasseur's motion, and affirming the decision of the Commissioner.[1]

### I. Background

**1. Factual and Administrative History**

Brasseur filed a claim for social security disability insurance benefits on June 4, 2014, alleging the onset of disability as of October 27, 2013 due to severe anxiety. Dkt. 6-7 at 5. His claim was denied on initial review and reconsideration. The administrative law judge (ALJ) held a hearing on November 9, 2015 at which Brasseur, his wife, and a vocational expert, Thomas W.

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment. Dkt. 15.

King, testified. The ALJ issued an unfavorable decision on February 29, 2016. The Appeals Council denied review on March 7, 2017, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

**2. Standard for District Court Review of the Commissioner's Decision**

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is "deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin,* 605 Fed. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c). The Fifth Circuit construes these regulations as setting forth the following standard: "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on

3

the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national

economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Brasseur met the insured status requirements of the Social Security Act through December 31, 2019 and did not engage in substantial gainful activity after October 27 2013, his alleged onset date.[3] Dkt. 6-3 at 19. The ALJ found that Brasseur had the severe impairments of anxiety, conversion disorder, and depression, none of which met or equaled a listing. *Id.* at 20.

The ALJ found that Brasseur had "no exertional limitations and can perform work at all exertional levels," but was "limited to simple, routine tasks that require no more than occasional interaction with the public . . . cannot work at fast-paced, assembly type, production jobs . . . can tolerate no more than moderate levels of stress . . . [and] cannot work around hazards such as unprotected heights, open water or flame and/or moving/dangerous machinery." Dkt. 6-3 at 21-22. Based on the testimony of a vocational expert, the ALJ found that Brasseur is unable to perform his past relevant work as a system analyst, but considering his age, education, work experience, and RFC, he is able to perform jobs that exist in significant numbers in the national economy, and thus he has not been under a disability from his alleged onset date through the date of the ALJ's decision. *Id.* at 28.

## II. Analysis

Brasseur argues that the ALJ committed reversible error by ignoring the report of his retained consultants, Ron Legaspi, a vocational evaluator, and Emma Vasquez, a rehabilitation consultant, of Alfred & Vasquez Associates, Inc. Brasseur argues the error committed by

---

[3] In making this ruling, the ALJ gave Brasseur "the benefit of the doubt." The ALJ noted that the evidence shows that Brasseur continued to work past his alleged onset date of October 27, 2013, and his lack of candor on this fact diminished his credibility. Dkt. 6-3 at 19-20.

ignoring this report is not harmless because the vocational expert, Thomas W. King, testified in response to a hypothetical question from the ALJ that no jobs exist in the national economy for an individual with limitations like those attributed to Brasseur in the Alfred & Vasquez report. Dkt. 6-3 at 61. Brasseur also asserts the additional and separate argument that the ALJ erred by failing to make findings as to his degree of limitation in each of the four broad functional areas described in 20 C.F.R. 1520a(c)(3).

1. **Consideration of Vocational Consultant Reports**

Brasseur's counsel referred him to Alfred & Vasquez to undergo an assessment of his ability to perform work. Dkt. 6-7 at 67. Brasseur participated in an evaluation May 28-29, 2015, during which evaluators observed his behavior and asked him to perform clerical work, repetitive assembly, and to take career preference surveys. The June 29, 2015 report from Alfred & Vazquez concludes:

> Evaluation results indicate that Mr. Brasseur cannot return to his past work as a systems analyst because of significant problems with concentration and pace that intensified as the evaluation progressed. Difficulty managing even minimal levels of stress, chronic anxiety, diminished concentration, and mental fatigue impede his ability to work effectively. We conclude from our testing that Mr. Brasseur would be unsuccessful maintaining employment of any kind primarily due to his progressive deterioration in concentration and pace observed during the course of the evaluation.

Dkt. 6-7 at 71-72. The ALJ did not explicitly address the Alfred & Vasquez report in her decision. As discussed below, the ALJ's failure to discuss the report in her decision does not constitute reversible error.

   **A. The Social Security Regulations do not require the ALJ to discuss a vocational rehabilitation consultant report in the decision**

To begin with, whether Brasseur is capable of work is a legal conclusion reserved to the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). As such, the ALJ was not

required to accept, or even consider, the conclusion in the Alfred & Vasquez report that Brasseur is incapable of work. *See* 20 C.F.R. § 404.1527(d).

Next, a vocational rehabilitation consultant is not an accepted medical source, and therefore the ALJ need not give a vocational rehabilitation consultant's report any special consideration or particular weight. 20 C.F.R. §§ 404.1513(d)(1), 416.1913(d)(1); *Bowie v. Astrue*, Civil Action No. 08-773-JJB-DLD, 2010 WL 1838346, at *6 (M.D. La. Mar. 23, 2010), *report and recommendation adopted,* No. CIVA 08-773-JJB-DLD, 2010 WL 1853720 (M.D. La. May 6, 2010) ("Because vocational rehabilitation counselors are not considered 'acceptable medical sources' but only 'other sources,' reliance on their opinions is merely permissive"). An ALJ is not always required to expressly discuss the weight to be given an "other source" opinion:

> The adjudicator generally should explain the weight given to opinions from these sources *or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning*, when such opinions may have an effect on the outcome of the case.

20 C.F.R. § 404.1527 (emphasis added). "[W]hile it is true that the ALJ generally should explain the weight given to these other sources or otherwise ensure that the discussion in the decision will allow a claimant or subsequent reviewer to follow the ALJ's reasoning, the ALJ still enjoys the 'sole responsibility for weighing the evidence and may choose whichever physicians' diagnosis is most supported by the record.'" *Bowie*, 2010 WL 1838346, at *6 (*quoting Muse v. Sullivan,* 925 F.2d 785, 790 (5th Cir.1991)). In *Bowie*, the ALJ's failure to discuss the vocational rehabilitation consultant's opinion did not require remand because the ALJ's reasoning could be followed through the discussion in the decision and substantial evidence supported the decision. 2010 WL 1838346, at *6. *See also Goncalves v. Astrue*, 780 F. Supp. 2d 144, 148 (D. Mass.

2011) ("In general, courts have upheld ALJs when they fail to discuss [vocational rehabilitation consultants], as long as there is substantial other evidence to support the final conclusion"); *Jeremy M. v. Berryhill*, No. CV 16-85S, 2017 WL 8402779, at *3 (D.R.I. May 26, 2017), *report and recommendation adopted sub nom. Menge v. Berryhill*, No. CV 16-085 S, 2017 WL 3278863 (D.R.I. Aug. 1, 2017) ("the ALJ's failure to mention a non-medical vocational report in the written decision, whether or not it is potentially material to the outcome, does not require remand. Courts emphasize that the ALJ is not required to discuss each piece of evidence in the record and that no mention of such evidence should be interpreted to mean that it was afforded no weight."); *Barowsky v. Colvin*, No. 15-CV-30019-KAR, 2016 WL 634067, at *6 (D. Mass. Feb. 17, 2016) ("It would have been preferable had the ALJ directly addressed [a licensed social worker's] opinion . . . Nonetheless, the ALJ was only *required* to ensure that his 'discussion of the evidence in the determination or decision allow[ed] a claimant or subsequent reviewer to follow the adjudicator's reasons when such opinions may have an effect on the outcome of the case.' SSR 06-03p, 2006 WL 2329939, at *6." (emphasis in original)).[4]

The Fifth Circuit has rejected the argument that an ALJ must specifically state the evidence that supports his decision and discuss all the evidence that was rejected. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994). Moreover, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it." *Hammond v. Barnhart*, 124 Fed. App'x 847, 851 (5th Cir.2005); *see also Vaught v. Astrue*, 271 Fed. App'x 452, 454 (5th Cir. 2008) (failing to find reversible error in the ALJ's failure to discuss a VA

---

[4] In *Foster v. Colvin*, No. 2:14-CV-24973, 2015 WL 4944980, at *23 (S.D.W. Va. Aug. 19, 2015), the court recognized the general rule that an ALJ is not required to expressly discuss all evidence in the record, including non-accepted medical source opinions. The court noted that while some courts in the Fourth Circuit ordered remand when the ALJ failed to expressly discuss a disability opinion from a non-medical source, other district courts did not. In *Foster*, the court had already decided to remand the case on other grounds, and merely ordered the ALJ to discuss the rehabilitation consultant evaluation on remand. *Id.*

medical examination specifically where it was "clear that the ALJ considered Vaught's VA medical records.").

The Alfred & Vasquez report was admitted into evidence at the ALJ hearing. *See* Dkt. 6-3 at 37 (admitting exhibits 1A through 7F). The ALJ decision states: "[i]n rendering this decision, the undersigned considered the evidence of record in its entirety even if not specifically mentioned [in] this decision. Specific evidence which is not discussed is either not relevant to the decision, supports the decision, or if not supportive was incorporated into a discussion of similar exhibits." Dkt. 6-3 at 17. It appears that the ALJ was aware of the Alfred & Vasquez report because she incorporated extreme limitations in one of the hypothetical questions she asked the vocational expert:

> Take the same individual; but now, I want you to add that he is unable to maintain sustained concentration persistence, or pace; would have trouble maintaining attendance standards; and would not be able to complete a normal workday or workweek without interruptions from psychologically-based symptoms. He is capable of tolerating only very low levels of stress, must work in a stable work environment with few changes in routine, and can have no contact with the public.

Dkt. 6-3 at 61.

The ALJ acknowledged in her decision that Brasseur has impairment-related functional limitations, although not as severe as those advocated by Alfred & Vasquez. Dkt. 6-3 at 21. Like the Alfred & Vasquez evaluators, the ALJ was persuaded that Brasseur could not perform his past skilled work. Nonetheless, the ALJ was convinced Brasseur was "capable of performing simple routine tasks that require no more than occasional interaction with the public." Dkt. 6-3 at 26, 27. As the ALJ explained, "the medical evidence repeatedly indicates that his symptoms are directly related to his skilled job as system analyst." Dkt. 6-3 at 26.

In this case, the ALJ clearly expressed the reasons for her RFC determination. Those reasons demonstrate that the ALJ rejected the conclusion of the Alfred & Vasquez report because it was not supported by other medical evidence in the record, and the discussion in the decision is sufficient to allow this court to determine that substantial evidence supports her decision. Therefore, the ALJ's failure to expressly state that the Alfred & Vasquez report was entitled to no weight is merely "a procedural impropriety, and procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Bowie v. Astrue*, No. CIVA 08-773-JJB-DLD, 2010 WL 1838346, at *6 (M.D. La. Mar. 23, 2010) (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988)).

This case differs from *Sun v. Colvin*, 793 F.3d 502, 512 (5th Cir. 2015), which is cited by Brasseur for the proposition that "remand is appropriate when the agency fails to explain the basis for its findings." Dkt. 9 at 6. In *Sun*, the ALJ failed to adequately develop the record, and did not consider relevant medical evidence in reaching his conclusion. Therefore, the Fifth Circuit concluded it was "unable to determine, considering the record as a whole, whether substantial evidence supports the ALJ's denial of benefits here." In this case, the ALJ's decision states that she considered all relevant evidence and the decision adequately explains the basis for her determination of no disability. The court concludes that the ALJ did not err in failing to expressly address the vocational rehabilitation consultant report.

### B. Substantial evidence supports the ALJ's decision.

The evidence supporting the ALJ's decision includes treatment notes from Brasseur's treating physician, Dr. Alford, which repeatedly note Brasseur's anxiety is triggered by high

levels of work stress which, for example, caused him to feel overwhelmed by complicated work emails, to need breaks from complicated problems and to wake up at night thinking about work. *See* Dkt. 6-3 at 22-23, 26; Dkt. 6-8 at 29, 33, 35, 39; Dkt. 6-10 at 38, 60-61. It is also consistent with the psychological consultative examination performed by Dr. Martinez on August 11, 2014. Dkt. 6-10 at 20-24; Dkt. 6-3 at 24-25. The results were unremarkable and showed few if any deficiencies in abstract and logical thinking, no overt signs of hallucinations or thought disorder, no confusion, no disorientation as to time, place, person, and situation, intact memory, adequate concentration and attention, adequate judgment, and fair insight. The diagnosis was generalized anxiety disorder. *Id.*

The ALJ gave great weight to State agency psychological consultants who opined that Brasseur's symptoms caused moderate difficulties in activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Dkt. 6-3 at 27; Dkt. 6-3 at 2-27. In addition, the record indicates Brasseur is totally independent in all activities of daily living and is able to care for himself. Brasseur's activities of daily living include driving his tractor and taking care of animals on his ranch. Dkt. 6-3 at 20, 26; Dkt. 6-7 at 12-19. At the hearing, Brasseur testified that the prior week he emailed his boss to inquire whether he could attempt to work from home, an indication that he is still able to work. Dkt. 6-3 at 26; Dkt. 6-3 at 46. He also testified that after his alleged onset date he performed some "bush hogging," or cutting grass or brush with a tractor attachment. Dkt. 6-3 at 44. As the ALJ noted, Brasseur is receiving psychiatric treatment, but has not had any episodes of hospitalization or aggressive mental health treatment, indicating that medication and psychotherapy help control his symptoms.[5] Dkt. 6-3 at 26. A psychological evaluation performed by Dr. Thompson, on

---

[5] In fact, a report prepared by his psychiatrist for the purposes of short-term disability insurance notes his prognosis for returning to work is good. Dkt. 6-9 at 18-19.

referral from Brasseur's treating psychiatrist, concluded Brasseur "does not appear to be capable of securing and/or maintaining employment for the foreseeable future." Dkt. 6-10 at 54. The ALJ afforded this opinion little weight because it was inconsistent with treatment notes and Brasseur's reported activities of daily living. Dkt. 6-3 at 27. In addition, Dr. Thompson did not do a function-by-function analysis, and as noted above, an opinion that a claimant cannot work has no probative weight. Significantly, the ALJ's RFC determination takes into account Brasseur's limited ability to concentrate and need for no more than moderate stress.

**2. Findings Regarding Broad Areas of Functional Limitations**

Brasseur contends that the ALJ erred in not making specific findings of Brasseur's degree of limitation in two of the four broad functional areas described in 20 C.F.R. § 404.1520a(c)(3), specifically, the ability to understand, remember, or apply information and the ability to adapt or manage oneself. Dkt. 11 at 2. Brasseur's argument is based on a version of 20 C.F.R. § 404.1520(a)(c)(3) that was not in effect at the time of the ALJ's decision in this case. Section 1520a(c)(3) was amended effective January 2017 and the description of the four broad functional areas changed. The broad functional areas labeled ability to understand, remember, or apply information and ability to adapt or manage oneself are included only in the new regulation.

In evaluating the severity of a mental impairment, the ALJ uses the "special technique" for mental impairment evaluations described in the disability regulations at 20 C.F.R. § 1520a(a) ("The steps outlined in § 404.1520 apply to the evaluation of physical and mental impairments. In addition, when we evaluate the severity of mental impairments for adults . . . . we must follow a special technique at each level in the administrative review process."). *See Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 20 09); *Woodward v. Berryhill*, Civil Action No. 3:16cv126, 2017 WL 4403323, at *5 (S.D. Tex. Sept. 29, 2017). As part of this severity analysis, the ALJ is

12

required to make a finding as to the degree of the claimant's limitation. 20 C.F.R. § 1520a(c)(2). At the time of the ALJ's decision in this case, the four broad functional areas the ALJ was required to consider in making this finding were: (1) activities of daily living, (2) social functioning; (3) concentration, persistence, or pace, and (4) episodes of decompensation. 20 C.F.R. § 1520a(c)(3). In this case, the ALJ expressly found mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. *Id.* The ALJ then incorporated all limitations related to Brasseur's mental impairment that are supported by the record into her RFC assessment, and into her hypothetical question to the testifying vocational expert. *See id.* at 21-28. Brasseur has not shown that the ALJ erred in applying § 404.1520a.

### III.   Conclusion

The court concludes that the ALJ's decision is not based on incorrect legal standards and is supported by substantial evidence. Therefore, Brasseur's motion is **DENIED** and the Commissioner's decision denying benefits is **AFFIRMED**.

Signed at Houston, Texas, on June 8, 2018.

*[signature]*
Christina A. Bryan
United States Magistrate Judge